**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON**

**RYON YORK, individually
and on behalf of all others
similarly situated,**

    **Plaintiff,**

v.                                      **CASE NO.:**

**NESTLE WATERS NORTH
AMERICA, INC.,**

    **Defendant.**

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Ryon York ("Plaintiff"), files this Class Action Complaint against Defendant, Nestle Waters North America, Inc. ("Defendant"), alleging that Defendant failed to provide he and the putative class adequate notice of their right to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). In further support thereof, Plaintiff states as follows:

### BRIEF OVERVIEW

1. Defendant, the plan sponsor and plan administrator of the Nestle Waters North American Holdings Group Benefit Plan ("the Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health insurance coverage following an occurrence of a "qualifying event" as defined by the statute.

2. COBRA is a remedial statute that should be interpreted in favor of the employee. The legislative history makes clear Congress enacted COBRA in 1986 as a result of the reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay. The purpose behind its notice requirements is to facilitate and assist individuals in electing continuation coverage should they so choose, not discourage them from doing so as Nestle's does.

3. Defendant's COBRA notice violates 29 C.F.R. § 2590.606–4(b)(4). It is not written in a manner calculated to be understood by the average plan participant because it attempts to scare individuals away from electing COBRA by including an ominous warning suggesting that the submission of even "incomplete" information when electing COBRA may result in civil, or even criminal, penalties.

4. The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual." This information is thrown into Defendant's notice without context, much less with an explanation of why potential criminal penalties, or IRS penalties, are somehow relevant to the COBRA election process.

5. Threats of criminal penalties and IRS fines simply have no place in a COBRA election notice, a process which is supposed to facilitate COBRA coverage election rather than intimidating people into not electing coverage. Adding such information distorts the information provided in the notice while also discouraging people, including Plaintiff, from

electing COBRA, and also violating 29 C.F.R. § 2590.606–4(b)(4)'s requirement that notices be written in a manner calculated to be understood by the average plan participant.

6. Additionally, Defendant's COBRA notice also violates 29 C.F.R. § 2590.606–4(b)(4)(v) because it includes conflicting information on when the COBRA continuation coverage form is actually due. Not only that, Defendant's COBRA form violates 29 C.F.R. § 2590.606–4(b)(4)(vi) because it fails to sufficiently identify the Plan Administrator.

7. As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION AND VENUE

8. Venue is proper in the United States Court for the Middle District of Florida, because the events giving rise to these claims arose in this district.

9. Plaintiff is a Florida resident, resides in this district and was a participant in the Plan prior to his termination, a qualifying event within the meaning of 29 U.S.C. § 1163(2).

10. Defendant is a foreign corporation with its headquarters in Stamford, Connecticut, and employed more than 20 employees who were members of the Plan in each year from 2013 to 2019. Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## SUPPORTING LAW AND FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

11. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

12. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161. (Emphasis added).

13. Notice is of enormous importance. The COBRA notification requirement exists because employees are not presumed to know they have a federally protected right to continue healthcare coverage subsequent to a qualifying event.

14. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

15. The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

> (4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii) Identification of the qualifying event;

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a

description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

> (xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

16. To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

17. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110.00 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

18. Here, Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

*Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

19. Defendant did not use the Model Notice to notify plan participants of their right to continuation coverage even though the Model Notice adequately provides all required information and would have provided Defendant with a "safe harbor" if used. The Model Notice further demonstrates how the information can, and is required to, be written in a manner

calculated to be understood by the average plan participant providing a near-foolproof way for persons to sign up for continuing coverage of their existing benefits.

20. Rather than use the Model Notice, Defendant authored and disseminated a notice which omitted critical information required by law and needlessly included language meant to deter and otherwise "chill" election of COBRA benefits. The information Defendant omitted from its notice is information that is included in the Model Notice.

21. The evidence will show Defendant used its deficient Notice to discourage participants from enrolling in continuation coverage.

22. Defendant's Notice violates several key COBRA requirements, specifically:

    a. The notice violates 29 C.F.R. § 2590.606–4(b)(4)(v) because it includes conflicting information on the time period during which the election must be made, and the date by which the election must be made;

    b. The notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits; and, finally,

    c. The notice violates 29 C.F.R. § 2590.606-4(b)(4) because, by including threats of criminal penalties and IRS fines which simply have no place in a COBRA election notice, and by omitting the other required information set out above, Defendant failed to provide a notice "written in a manner calculated to be understood by the average plan participant."

23. Defendant's COBRA Notice confused Plaintiff, and resulted in his inability to make an informed decision as to electing COBRA continuation coverage.

24. As a result of the deficient notice, Plaintiff did not elect COBRA continuation coverage as those benefits for which he was eligible, including dental and life insurance.

8

25. Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide him with information to which he was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

26. Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members he seeks to represent by failing to provide the information required by COBRA.

27. Besides the informational injury suffered, Plaintiff also suffered a tangible injury in the form of economic loss, specifically the loss of dental and life insurance coverage. Insurance coverage is an employer subsidized benefit of employment of monetary value, the loss of which is a tangible injury.

### *Plaintiff Ryon York*

28. Named Plaintiff Ryon York began working for Defendant as a logistics resource in November 2016, and he worked in this capacity until January 8, 2019.

29. On or about January 8, 2019, Defendant terminated Plaintiff's employment.

30. Plaintiff was not terminated for "gross misconduct" and was therefore eligible for continuation coverage.

31. Plaintiff's termination was a qualifying event, which triggered Defendant's COBRA notice obligations.

32. Following his termination, Defendant caused its COBRA administrator to mail Plaintiff the deficient COBRA notice.

33. The COBRA notice was not written in a manner calculated to be understood by the average plan participant.

34. The COBRA notice did not provide Plaintiff with the substantive information to which he was entitled pursuant to federal law, as set out further below, giving rise to this lawsuit.

35. Plaintiff was not required to exhaust any administrative remedies through Defendant prior to bringing suit because no such administrative remedies exist. Even if they did, any attempts to exhaust the administrative remedies would have been futile.

*Violation of 29 C.F.R. § 2590.606-4(b)(4)*
*Defendant failed to provide notice written in a manner*
*calculated "to be understood by the average plan participant"*

36. Whether a defendant's COBRA notification complies with the law turns on whether the notice is understandable by an average plan participant. This requirement has been interpreted as an objective standard rather than requiring an inquiry into the subjective perception of the individual plan participants.

37. 29 U.S.C. § 1166(a)(4)(A) requires plan administrators to notify the former employee of their right to receive continuation coverage with a notice that must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

38. As previously stated, Defendant's notice omits any reference to the plan administrator's name, address, and telephone number, as required by 29 C.F.R. § 2590.606-

4(b)(4)(i). It also includes contradictory dates as to the deadline for election. 29 C.F.R. § 2590.606-4(b)(4)(v).

39. Not only that, Defendant's COBRA notice includes language warning of and threatening certain criminal and IRS penalties for noncompliance with its notice procedures.

40. Specifically, the notice includes the following language: "any person who knowingly provides materially false, incomplete, or misleading information is considered to have committed an act to defraud or deceive the Plan Sponsors. The filing of any application for insurance or other claim for benefits based on false, misleading, or incomplete information is a fraudulent act and may result in criminal or civil penalties."[1]

41. The election form also needlessly references a possible "$50 penalty from the IRS for each failure to provide an accurate tax identification number for a covered individual."

42. Defendant first buries its "COBRA Election Form" in the middle of its voluminous "COBRA Election Notice Summary."

43. And, adding to the confusion, Defendant placed its misleading "certification" immediately after the election form without any reference to it in the Defendant's instructions on how to enroll using the paper election form in its "COBRA Election Notice Summary."

44. In fact, nowhere in Defendant's "COBRA Election Notice Summary" are there instructions on what to do with the arbitrary "certification" form, including whether it is somehow required to enroll in COBRA.

---

[1] Though it is unclear which criminal or civil statute Defendant is referencing, the ominous language Defendant included in its "certification," omits the required element of intent which limits such penalties only to those instances when incomplete, false, or misleading information is presented "with the intent to injure, defraud, or deceive any insurer." Fla. Stat. § 817.234(1)(a).

45. Defendant further includes needless language of monetary penalties for failure to provide tax identification numbers for those electing COBRA benefits.

46. The DOL Model Notice and its COBRA Continuation Coverage election Form does not contain such a "certification" regarding possible IRS penalties. Yet the Model DOL still manages to convey the required information, and does so in only seven pages compared to Defendant's nineteen pages of conflicting, inadequate, and misleading information.

47. Without the above required information, coupled with its inclusion of needless criminal and IRS penalties, Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

*Violation of 29 C.F.R. § 2590.606-4(b)(4)(v)*
*Conflicting dates provided for when election due*

48. Under COBRA, the plan administrator must allow the discharged employee and other qualified beneficiaries sixty (60) days from the date on which coverage ends under the plan, or 60 days from the date notice was given to decide whether or not to elect continuation of their group health plan coverage. § 1165(1).

49. In addition, payment of the first premium is not due until 45 days after the date when election of continuation of coverage is made. § 1162(3).

50. In the present case, Defendant's notice provides information concerning how long the continuation of coverage will last and the amount of the premium. However, as to the enrollment deadline, Nestle's COBRA form states on page 3 contains one deadline.

51. But directly next to that information is a box clearly stating as follows: "If you do not complete the enrollment process within 60 days, you will lose your right to elect COBRA coverage." These two dates cannot be reconciled.

52. Plaintiff cannot truly make an informed decision regarding continuation coverage without knowing the specific, and correct, date when the election form is due. Not only that, the enrollment deadline also impacts the date for payment.

53. Confusing or misleading notices, like that used by Nestle, about the duration of the election period and the 45 day grace period for payment of an initial premium for continuation coverage demonstrate Nestle has violated 29 C.F.R. § 2590.606-4(b)(4)(v).

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)*
### *Failure to Identify Plan Administrator*

54. The COBRA notice provided to Plaintiff omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits. Instead, the third-party administrator, BenefitConnect, is identified, but that is not what the statute requires. Thus, Plaintiff was never informed *who* administers the continuation coverage, which is the Nestle entity named here.

55. Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606-4(b)(4)(i). Defendant's Notice failed to comply with this fundamental requirement.

56. Defendant's notice only identifies a third-party administrator. A third-party administrator is different from the Plan Administrator. Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee, particularly in cases, like this, involving large corporations with multiple entities located throughout the country.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were the COBRA notice by Defendant, in the same form sent to Plaintiff, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA**.

58. No administrative remedies exist as a prerequisite to Plaintiff's claim on behalf of the Putative Class. As such, any efforts related to exhausting such non-existent remedies would be futile.

59. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

60. <u>Typicality:</u> Plaintiff's claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies.

61. <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class members; she has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

62. <u>Commonality:</u> Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

    b.    Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    c.    Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

    d.    The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and, finally,

    e.    Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

63.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.

64.    Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

65.    Plaintiff intends to send notice to all Class Members. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party COBRA administrator.

## CLASS CLAIM I FOR RELIEF
*Violation of 29 U.S.C. § 1132(c)(1), ERISA § 502(c), and*
*29 C.F.R. § 2590.606-4*

66.     The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

67.     Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

68.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

69.     On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice.

70.     The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

71.     These violations were material and willful.

72.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a), ERISA § 502(c), and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

        a.     Designating Plaintiff's counsel as counsel for the Class;

b. Issuing proper notice to the Class at Defendant's expense;

c. Declaring that the COBRA notice sent by Defendant to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d. Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e. Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f. Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g. Granting such other and further relief, in law or equity, as this Court deems appropriate.

h. Designating Plaintiffs' counsel as counsel for the Class;

i. Issuing proper notice to the Class at Defendant's expense;

j. Declaring that the COBRA notice sent by Defendant to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

k. Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

l. Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

m. Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

      n.     Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 28th day of April, 2020.

Respectfully submitted,

*/s/ Brandon J. Hill*

**LUIS A. CABASSA, ESQ.**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL, ESQ.**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

*Attorneys for Plaintiff*